IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE NASHVILLE
DIVISION

| | |
|---|---|
| THOMAS T. MURRAY, </br>as Administrator of the Estate of </br>MICHAEL JEROME FLOYD, deceased </br></br>v. </br>CHEATHAM COUNTY, TENNESSEE; </br>JOHN HOLDER, Individually and in his Official Capacity </br>as Sheriff of Cheatham County, Tennessee; </br>JOHN/JANE DOE, PERSONAL REPRESENTATIVE OF </br>DANNY HUMPHREY, Individually and in his Official Capacity </br>as an employee of the Cheatham County Sheriff's Department; </br>ED LOXLEY, Individually and in his Official Capacity as an </br>employee of the Cheatham County Sheriff's Department; </br>KIMBERLY COTTER, Individually and in her Official Capacity </br>as an employee of the Cheatham County Sheriff's Department; </br>BILL KRANTZ, Individually and in his Official Capacity as </br>an employee of the Cheatham County Sheriff's Department; </br>JOE GLOVER, Individually and in his Official Capacity as an </br>employee of the Cheatham County Sheriff's Department; </br>CINDY HAZLEWOOD, Individually and in her Official Capacity; </br>as an employee of the Cheatham County Sheriff's Department; </br>BEN MOORE, Individually and in his Official Capacity as </br>an employee of the Cheatham County Sheriff's Department; </br>DONALD VINEYARD, Individually and in his Official Capacity </br>as an employee of the Cheatham County Sheriff's Department; </br>KEN MILLER, Individually and in his Official Capacity as </br>an employee of the Cheatham County Sheriff's Department; | Case No. _____ </br>JURY DEMAND |

## COMPLAINT

Thomas T. Murray, Administrator of the Estate of Michael Jerome Floyd, Deceased, through counsel, states as follows for his Complaint against the above-named Defendants:

I.      **Preliminary Statement**

1.      This is a civil action in which Plaintiff seeks relief pursuant to 42 U.S.C. Section 1983 for violations of the Decedent's rights secured and guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution, the laws of the United States and the laws of the state of Tennessee, and other applicable provisions.

2.      The claims asserted herein arise from the July 5, 2013 death of Michael Jerome Floyd (Decedent), who died in the care and custody of the Defendants in the Cheatham County Jail while in obvious need of medical care and treatment. Defendants were advised more than nine hours before Michael Floyd's death that he required immediate medical care. None was provided.

3.      The Defendants, all of whom were acting under color of law, violated the civil and constitutional rights of Decedent to safe and secure arrest and custody, to safe and secure incarceration, and, to necessary medical and mental health care and treatment during detention.

4.      Plaintiff seeks monetary damages, compensatory and punitive, as well as an award of costs and reasonable attorneys' fees, and all such other relief as the Court deems appropriate.

II.     **Jurisdiction and Venue**

5.      The Court has jurisdiction over this matter pursuant to Title 28 U.S.C. §§ 1331 and 1343, *et seq.*, as certain claims asserted herein arise under the Constitution and laws of the United States, to wit, the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

6. Supplemental jurisdiction over state-law claims is asserted pursuant to 28 U.S.C. §1367

7. The acts and omissions asserted herein occurred in and the State of Tennessee in the Middle District of Tennessee. Venue is proper pursuant to 28 U.S.C. § 1391(b).

## III. Parties

### A. Plaintiff and Decedent

8. Decedent Michael Jerome Floyd was a citizen of the United States of America, residing in Davidson County, Tennessee, and entitled to the protections of the Constitutions and laws of the United States and the state of Tennessee. Mr. Floyd was a pre-trial detainee at the time of his death. Michael Floyd was a single man, never having been married. His closest survivor is his minor child, Jaylen Michael Floyd, age 10 at his father's death.

9. Plaintiff Thomas T. Murray is the duly appointed Administrator of the Estate of Michael Jerome Floyd, deceased, in the Circuit Court for Davidson County, Tennessee, Probate Division, Case No. 13P1698. Thomas Murray is Decedent's brother and the uncle of Jaylen Michael Floyd, the only child of the deceased. In bringing this action against the above-named Defendants, the Administrator acts in his representative capacity for the benefit and on behalf of the Estate of Michael Jerome Floyd.

### B. Defendants

**Cheatham County**

10. Defendant Cheatham County, Tennessee is a political subdivision of the State of Tennessee. Agencies, officials, and employees of defendant Cheatham County engaged in unconstitutional acts under color of law that violated plaintiff's civil rights and resulted in his death. Defendant Cheatham County, Tennessee may be served with process through the Mayor of Cheatham County, Tennessee, c/o David McCollough, 100 Public Square, Suite 105, Ashland City, Tennessee 37015.

11. Cheatham County is liable under state law claims for the actions and omissions of its agents, officials, and employees described herein under the principles of vicarious liability and applicable state law provisions. Cheatham County is a person pursuant to 42 U.S.C. § 1983. The Cheatham County Sheriff's Department (aka Cheatham County Sheriff's Office) is a department in the government of Cheatham County and not a person pursuant to 42 U.S.C. § 1983. The employees of the Cheatham County Sheriffs Department are employees of Cheatham County. The employees are persons pursuant to 42 U.S.C. § 1983.

**Sheriff John Holder**

12. Defendant John Holder, at all times relevant, was and is the Sheriff of Cheatham County and was acting under color of state law. Sheriff Holder may be served with process at 200 Public Square, Ashland City, Tennessee 37015. Sheriff Holder is sued in his individual and official capacity.

13. Defendant Sheriff Holder operated and managed the Cheatham County Sheriff Department and Cheatham County Jail where Michael Floyd was detained from July 4, 2013 until his death, during which time Decedent was under the exclusive custody, control and care of Sheriff Holder and the employees and agents of the Cheatham County Sheriff's Department.

14. Defendant Sheriff Holder was responsible for the administration, operation and supervision of the Cheatham County Sheriff's Department and Cheatham County Jail and facilities, including the promulgation, implementation, enforcement and review of rules, regulations, policies, customs and practices. Sheriff Holder was responsible for hiring, training, supervising, and disciplining the employees of the Sheriff's Department.

15. Defendant Sheriff Holder was under a non-delegable duty to promulgate policies, practices, procedures and/or customs to ensure that detainees at the Cheatham County Jail were provided with adequate, necessary and reasonable medical and mental health care, screening, assessment, treatment, intervention, referral and attention.

16. Defendant Sheriff Holder was under a non-delegable duty to provide adequate, necessary, and reasonable medical and mental health care, screening, assessment, treatment, intervention, referral and attention to those detained at the Cheatham County Jail.

17. Defendant Sheriff Holder was under a non-delegable duty to provide department employees with adequate training, supervision, discipline, and resources to assure that pretrial detainees received adequate medical and mental health care for serious medical needs.

**John/Jane Doe, Personal Representative of Danny Humphrey**

18. Defendant John/Jane Doe, is the Personal Representative of Danny Humphrey. On information and belief, Plaintiff was recently informed that Danny Humphrey is dead. Plaintiff is making inquiry to ascertain the identity of the Personal Representative of Danny Humphrey. If no Personal Representative exists, Plaintiff will petition the appropriate state court for appointment of same, and thereafter amend this Complaint.

19. Danny Humphrey, at all times relevant, was a correctional officer with Cheatham County Sheriff's Department. Danny Humphrey was acting within the course and scope of his employment with Cheatham County, and under color of state law. Defendant John/Jane Doe, Personal Representative of Danny Humphrey is sued in their individual and official capacity.

20. Danny Humphrey was directly responsible for Decedent Floyd's custody and care at the Cheatham County Jail. Danny Humphrey worked booking at the Cheatham County Jail and was on duty on July 4, 2013 when Decedent Floyd arrived in the custody of THP Paul Gross and Deputy Ken Miller. Danny Humphrey had primary direct responsibility for Decedent's care from approximately 6:00 p.m. until approximately 10:00 p.m. on July 4, 2013. Defendant John/Jane Doe, Personal Representative of Danny Humphrey is liable to Decedent for the actions of Danny Humphrey while he was acting within the course and scope of his employment with Cheatham County, and under color of state law.

**Ed Loxley**

21.     Defendant Ed Loxley, at all times relevant, was a correctional officer with Cheatham County Sheriff's Department. Defendant Loxley was acting within the course and scope of his employment with Cheatham County, and under color of law. Defendant Loxley is sued in his individual and official capacity.

22.     Defendant Loxley was responsible for Decedent Floyd's custody and care at the Cheatham County Jail. Defendant Loxley worked booking at the Cheatham County Jail and was on duty on July 4, 2013 when Decedent Floyd arrived in the custody of THP Paul Gross and Deputy Ken Miller. Defendant had primary direct responsibility for Decedent's care and custody from approximately 6:00 p.m. until approximately 10:00 p.m. on July 4, 2013.

**Kimberly Cotter**

23.     Defendant Kimberly Cotter, at all times relevant, was a correctional officer with Cheatham County Sheriff's Office. Defendant Cotter was acting within the course and scope of her employment with Cheatham County, and under color of law. Defendant Cotter is sued in her individual and official capacity.

24.     Defendant Cotter was directly responsible for Decedent Floyd's custody and care at the Cheatham County Jail. Defendant Cotter was on 2nd shift duty when Decedent Floyd was booked into the Cheatham County Jail on July 4, 2013. Defendant had direct responsibility for Decedent's care and custody from approximately 6:00 p.m. until approximately 10:00 p.m. on July 4, 2013.

**Bill Krantz**

25.     Defendant Bill Krantz, at all times relevant, was a correctional officer with Cheatham County Sheriff's Department. Defendant Krantz was acting within the course and scope of his employment with Cheatham County, and under color of law. Defendant Krantz is sued in his individual and official capacity.

26.     Defendant Krantz was directly responsible for Decedent Floyd's custody and care at the Cheatham County Jail. Defendant Krantz was on 2nd shift duty when Decedent Floyd was booked into the Cheatham County Jail on July 4, 2013. Defendant had direct responsibility for Decedent's care and custody from approximately 6:00 p.m. until approximately 10:00 p.m. on July 4, 2013.

**Joe Glover**

27.     Defendant Joe Glover, at all times relevant, was a correctional officer with Cheatham County Sheriff's Department. Defendant Glover was acting within the course and scope of his employment with Cheatham County, and under color of law. Defendant Glover is sued in his individual and official capacity.

28.     Defendant Glover was directly responsible for Decedent Floyd's custody and care at the Cheatham County Jail.  Defendant Glover worked 3rd shift on July 4, 2013 and was on duty from 10:00 p.m. until Michael Floyd died in his cell. Defendant Glover was directly responsible for Decedent Floyd's custody and care at the Cheatham County Jail during the last hours of decedent's life.

**Cindy Hazlewood**

29. Defendant Cindy Hazlewood, at all times relevant, was a correctional officer with Cheatham County Sheriff's Department. Defendant Hazlewood was acting within the course and scope of her employment with Cheatham County, and under color of law. Defendant Hazlewood is sued in her individual and official capacity.

30. Defendant Hazlewood worked 3rd shift on July 4 and July 5, 2013 and was on duty from 10:00 p.m. until Michael Floyd died in his cell. Defendant Hazlewood was directly responsible for Decedent Floyd's custody and care at the Cheatham County Jail during the last hours of decedent's life.

**Ben Moore**

31. Defendant Ben Moore, at all times relevant, was a correctional officer with Cheatham County Sheriff's Department. Defendant Moore was acting within the course and scope of his employment with Cheatham County, and under color of law. Defendant Moore is sued in his individual and official capacity.

32. Defendant Moore was directly responsible for Decedent Floyd's custody and care at the Cheatham County Jail. Defendant Moore worked 3rd shift at the Cheatham County Jail and was on duty on from approximately 10:00 p.m. July 4th until Michael Floyd's died in his cell. Defendant Moore had direct responsibility for Decedent's custody and care at the Cheatham County Jail during the last hours of decedent's life.

**Donald Vineyard**

33.     Defendant Donald Vineyard, at all times relevant, was a correctional officer with Cheatham County Sheriff's Department. Defendant Vineyard was acting within the course and scope of his employment with Cheatham County, and under the color of law. Defendant Vineyard is sued in his individual and official capacity.

34.     Defendant Vineyard was directly responsible for Decedent Floyd's custody and care at the Cheatham County Jail.  Defendant Vineyard worked 3rd shift at the Cheatham County Jail and was on duty from approximately 10:00 p.m. July 4th until Michael Floyd died in his cell. Defendant Moore had direct responsibility for Decedent's custody and care from approximately 10:00 p.m. on July 4th until decedent's death.

**Ken Miller**

35.     Defendant Ken Miller, at all times relevant, was a deputy sheriff with Cheatham County Sheriff's Department. Defendant Miller was acting within the course and scope of his employment with Cheatham County, and under the color of law. Defendant Miller is sued in his individual and official capacity.

36.     Defendant Miller was on duty on July 4, 2013 and was dispatched from Cheatham County Sheriff's Office to Decedent Floyd's automobile crash scene.   Defendant Miller escorted Decedent Floyd and THP Gross to Cheatham County Jail and participated in Decedent Floyd's booking.

**IV. Statement of Facts**

37. On or about July 4, 2013 at approximately 3:45 p.m. Michael Jerome Floyd (Decedent) was involved in a one-person automobile crash near the 30-mile marker on I-24 West in Cheatham County, Tennessee. Defendant Miller and other law enforcement and medical responders were dispatched to the scene.

38. At the scene Miller and other responders found Floyd sitting behind his vehicle, which was located off the road in the median, down an embankment. There was minimal damage to the vehicle; the airbags did not employ and no broken windows. Floyd had exited the vehicle after the crash.

39. At the scene defendant Miller was informed that Floyd had attempted suicide by initiating the crash and had ingested multiple dosages of prescription medications and/or opiates, including Oxycodone (or roxys), Prozac, and Xanax. Floyd told Miller and other responders that he wanted to die. Miller and other responders observed that Floyd was groggy, not stable on his feet, and his speech was slurred, often incoherent. No alcohol was present or indicated.

40. At the crash scene Floyd was administered Narcon, a drug used to counter-act the effects of opiate ingestion. Floyd's responses improved temporarily. EMS responders advised the police responders, including defendant Miller, to take Floyd to the hospital.

41. Michael Floyd was arrested for Driving Under the Influence of Prescription Drugs and was not taken to the hospital. Instead, he was transported to the Cheatham County Jail in Ashland City. Defendant Miller escorted Trooper Gross and Michael Floyd to Ashland City and met Gross and Floyd at booking.

11
Case 3:14-cv-01414   Document 1   Filed 07/02/14   Page 11 of 20 PageID #: 11

42. On July 4, 2013 at approximately 6:00 p.m. Decedent Floyd was delivered by Gross and Miller to Danny Humphrey and Ed Loxley at the Cheatham County Jail. Humphrey and Loxley took custody and possession of the Decedent. Humphrey and Loxley attempted to ask "booking screening questions" and Floyd was not able to answer.

43. At booking, Decedent Floyd's condition had worsened. Floyd could not stand up and was placed in a chair. Floyd could not sit up for fingerprinting. Floyd was babbling incoherently, slumped in a chair. Trooper Gross and Ken Miller informed Humphrey and Loxley that Floyd had ingested multiple dosages of prescription medications, including Xanax and Prozac. Humphrey and Loxley were informed at booking that Decedent Floyd had "mental issues" and had said that he wanted to die.

44. On July 4, 2013 at approximately 6:00 p.m. the Ashland City Fire Department was contacted by the jail and requested to perform a blood draw on Mr. Floyd. Captain Dustin Shadowens and Firefighter Higgins responded. Mr. Floyd was sitting in a chair unconscious but responding to verbal stimuli. Mr. Floyd's blood was drawn and turned over to Trooper Gross. Capt. Shadowens observed that Floyd could not hold up his head and had already "busted his head on the counter a couple times."

45. Capt. Shadowens, a licensed emergency medical technician, advised Humphreys, Loxley, and Miller that Mr. Floyd "needed medical" should be sent to the emergency room for further medical evaluation and treatment. Shadowens advised Defendants that Floyd's "respiratory system could shut down." Miller, Humphries and Loxley responded that they would place Mr. Floyd on a "medical watch." After returning to the fire department, Captain Shadowens called and again advised Loxley that Floyd should go to the emergency room "to get

checked out." Instead, Decedent Floyd was placed in Cell No. 2 by Humphrey, Loxley, and Miller and soon could be heard snoring, gurgling, and choking. Floyd was placed on the cell floor on his back, facing the ceiling with his eyes partly open, and his arms spread at his side. Michael Floyd never stood up again.

46. For the last nine hours of his life Michael Floyd lay on the floor of Cell No. 2, unresponsive, on his back, facing the ceiling with his arms spread to his sides, gurgling and choking as his respiratory system collapsed. Decedent never sat-up, stood-up, communicated, ate, or exhibited any other response, as he lay dying in plain view of defendants. Defendants never examined him, sought any medical advice, or sought and/or provided Floyd any medical care.

47. Until approximately 10:00 p.m. decedent was in the custody and care of Humphrey, Loxley, Cotter and Krantz. At approximately 10:00 p.m. Joe Glover, Ben Moore, Cindy Hazlewood, and Donald Vineyard replaced the second shift defendants and took custody and possession of Decedent Floyd. Defendants Glover, Moore, Vineyard, and Hazlewood had direct custody and care of Michael Floyd until his death.

48. On July 5, 2013 at approximately 3:20 a.m. defendant Moore summoned the Ashland City Fire Department EMS station to the jail when he noticed that Michael Floyd was not breathing. Capt. Shadowens, who nine (9) hours before had advised defendants to take Decedent Floyd to the emergency room, responded with several other EMTs. The EMTs found Decedent Floyd unresponsive and apparently dead on the floor of Cell No. 2, and attempted to resuscitate him.

49. On July 5, 2013 at approximately 3:20 a.m. the Cheatham County Ambulance Service was summoned to the jail where EMTs Bragg and Merritt found Decedent Floyd cold, unresponsive, with no lung sounds, and Capt. Shadowens attempting resuscitation.

50. On July 5, 2013 at approximately 3:59 a.m. Michael Jerome Floyd was pronounced dead at Centennial Ashland City Hospital.

51. An autopsy was performed on Decedent on July 6, 2013 and concluded that death was caused by acute drug toxicity.

52. On July 4th 2013 when Michael Floyd was booked into the Cheatham County Jail the following policies, *inter alia*, were purportedly effective:

1. CORRECTIONS PERSONNEL WILL BE AWARE THAT AN EMERGENCY MEDICAL SITUATION CAN OCCUR AT ANY TIME.

   INSTITUTIONS SUCH AS THIS ONE OFTEN TIMES RECEIVE INDIVIDUALS SUFFERING FROM MENTAL HEALTH ILLNESS, OR EXHIBITING SYMPTOMS OF THE VARIOUS STAGES OR TYPES OF MENTAL ILLNESS. THESE INDIVIDUALS, WHEN FIRST OBSERVED, SHOULD IMMEDIATELY BE BROUGHT TO THE ATTENTION OF THE SHIFT SUPERVISOR.

   …………………………………….

1. ANY INMATE WHO EXHIBITS THE FOLLOWING SYMPTOMS MUST BE REFERRED TO THE NURSE AS SOON AS POSSIBLE:

   e. WITHDRAWAL–VERY LITTLE ACTIVITY, REFUSAL TO EAT, SPEAK OR GET OUT OF BED.


   SUICIDE IDENTIFICATION AND PREVENTION:

   UPON ADMISSION/ INTAKE TO THE FACILITY, EACH INMATE WILL BE ASKED VARIOUS SCREENING QUESTIONS AND ADDITIONALLY IF HE/SHE HAS EVER ATTEMPTED SUICIDE OR CURRENTLY HAS SUICIDAL IDEATIONS. IF AN INMATE ANSWERS YES TO EITHER OF THESE QUESTIONS, THE INMATE SHOULD BE IMMEDIATELY REFERRED TO THE MEDICAL STAFF AND/OR THE DESIGNATED MEDICAL HEALTH PROVIDER.

**V. Legal Claims**

**A.     Claim One.   Eighth Amendment and 42 U.S.C. § 1983**

**Deliberate Indifference to serious medical needs.**

53.     Plaintiff sues John Holder, Ken Miller, Personal Representative of Danny Humphrey, Ed Loxley, Kimberly Cotter, Bill Krantz, Joe Glover, Ben Moore, Cindy Hazlewood and Donald Vineyard pursuant to 42 USC § 1983 for deprivation of decedent's civil and constitutional rights under color of law. All allegations above are included herein.

54.     Defendants' deliberate indifference to the constitutional and civil rights of Michael Jerome Floyd directly caused his death and caused him undue pain and suffering before death.

55.     The Eighth Amendment of the Constitution of the United States affords inmates and pretrial detainees protection from cruel and unusual punishment. The Eight Amendment protection includes the right to adequate medical care. *Estelle vs. Gamble, 429 U.S. 97 (1976)*. The Fourteenth Amendment of the Constitution of the United States guarantees the general constitutional rights of pre-trial detainees. *Bell vs. Wolfish, 441 U.S. 520 (1979).* Deliberate indifference to the serious medical needs of a prisoner or pre-trial detainee violates the Eighth Amendment and the Fourteenth Amendment.

56.     On July 4 and July 5, 2013 decedent Michael Floyd was a prisoner in the custody of Holder, Miller, Humphrey, Loxley, Cotter, Krantz, Glover, Moore, Hazlewood and Vineyard. Michael Floyd had serious medical needs and the defendants were deliberately indifferent to those serious medical needs. Defendants' deliberate indifference directly caused Michael Floyd's death.

57. From 4:00 p.m. on July 4, 2013 until Floyd's death on July 5, 2013 defendants knew, *inter alia*: (1) that decedent had "mental issues" and a history of mental illness; (2) that decedent wanted to die; (3) that decedent had tried to kill himself; (3) that decedent had intentionally ingested multiple dosages of prescription medications; (4) that decedent could not walk, talk, stay awake, sit up, answer, eat, or stand up; (5) that decedent was laying unresponsive on the floor of a jail cell, regularly gurgling and choking; and (5) other relevant facts alleged above and to be proven at trial. Defendants were aware on July 4th and July 5th of serious medical needs and substantial risks to decedent's health, and defendants were deliberately indifferent.

58. Certified and licensed medical care providers specifically informed defendants on several occasions that decedent required emergency medical care. Defendants ignored this advice and their own policies and were deliberately indifferent to decedent's serious medical needs.

59. When arrested on July 4, 2013 and until his death, Michael Floyd had a serious medical need and faced a substantial risk of serious harm. Defendants knew of Floyd's serious medical need and disregarded it by failing to take reasonable and available measures to address the need. The defendants' failure to act proximately and directly caused harm to Floyd, including the loss of his life on July 5, 2013.

### B. Claim Two. Eighth and Fourteenth Amendment and 42 U.S.C. § 1983

**Failure to train, supervise and discipline. No effective policies and practices.**

60. Plaintiff sues Cheatham County and John Holder pursuant to 42 USC § 1983 for deprivation of decedent's civil and constitutional rights under color of law. All allegations above are included herein.

61. Cheatham County and Sheriff Holder have been reckless, negligent, and indifferent in hiring, training, supervising, and disciplining employees, including the defendants Miller, Humphrey, Loxley, Cotter, Krantz, Glover, Moore, Hazlewood and Vineyard, and are liable under the Eighth and Fourteenth Amendments for the deprivation of Michael Floyd's civil and constitutional rights under color of state law.

62. Police agencies and jails have a duty and obligation to train employees for the recurring tasks that officers will face during their employment. When it is foreseeable that a deputy sheriff or corrections officer will face a particular task or circumstance that may result in harm to another person, the county and sheriff have a duty to train, supervise, and discipline the employee to assure that the officer performs within a range of generally accepted conduct. Deliberate indifference to the duty to train, supervise, and discipline exposes the county and sheriff to liability for injury caused by the untrained and inept employee.

63. Defendants Cheatham County and Sheriff Holder have deliberately neglected and been indifferent to the duty to train, supervise, and discipline employees, which has resulted in unconstitutional customs and practices, and acts and omissions that deprived Michael Floyd of his constitutional rights, directly causing his death. Deliberate indifference to the duty to train, supervise, and discipline constitutes acquiescence in and approval by the

county and sheriff of the unconstitutional conduct by the individual defendants described herein.

64. Michael Floyd was denied the basic human need of adequate medical care for serious medical need and was subjected to cruel and unusual punishment by virtue of his incarceration at the Cheatham County Jail, a facility void of any effective polices, practices, and/or customs for the care of detainees with serious medical needs, particularly the needs presented by decedent. On July 4th 2013 and before, the Cheatham County Jail was staffed and operated by employees who were never appropriately trained and/or supervised to provide adequate care to detainees with serious medical needs. The county and sheriff are liable for the harm caused by their deliberate indifference to the duty to train, supervise, and discipline and to implement effective policies, practices, and customs for the care of detainees with serious medical needs.

65. Upon information and belief, plaintiff alleges that other similar circumstances have occurred during the tenure of Sheriff Holder that will be material and relevant to the pattern and practice and deliberate indifference allegations contained herein. As one EMT observed after Decedent was found dead in his cell, "It ain't the first time."

C. **Claim Three. Tennessee Governmental Tort Liability Act**

66. Alternatively, Plaintiff sues defendant Cheatham County and/or Cheatham County Sheriff's Department and/or Sheriff John Holder pursuant to the provisions of the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101 et sequel (TGTLA). All allegations above are included herein.

67. John Holder, Ken Miller, Danny Humphrey, Ed Loxley, Kimberly Cotter, Bill Krantz, Joe Glover, Ben Moore, Cindy Hazlewood and Donald Vineyard, during all times relevant, were employees of Cheatham County as that term is defined by the TGTLA. Negligent acts and /or omissions by these defendants, individually and together, proximately caused the death of Michael Floyd and caused him undue pain and suffering before his death.

68. Cheatham County and/or Cheatham County Sherriff's Department are governmental entities as that term is defined by TGTLA. Pursuant to TCA § 29-20-205 governmental entities are liable for injury proximately caused by the negligent act or omission of any employee within the scope of his employment. Cheatham County and/or Cheatham County Sherriff's Department are liable for the negligent acts and/or omissions of Holder, Miller, Humphrey, Loxley, Cotter, Krantz, Glover, Moore, Hazlewood, Vineyard and others, as alleged herein and developed by the proof at trial.

69. The negligent acts and/or omissions of the individual defendants include: (1) failure to timely provide adequate medical care for Michael Floyd; (2) failure to communicate Floyd's mental health, suicide ideation, and drug ingestion facts to health care providers; (3) failure to obtain advice from health care providers regarding Floyd's mental health, suicide ideation, and drug ingestion issues; (4) failure to record and communicate internally regarding Floyd's mental health, suicide ideation, and drug ingestion; (5) accepting Floyd for incarceration without referring him to medical care providers for medical examination; (6) failure to follow the advice of certified medical technicians to secure medical care for Floyd; (7) failure to follow purportedly effective jail policies; (8) failure to adequately train, supervise and discipline correction officers and deputy sheriffs regarding the identification of and response to serious

medical needs, particularly the needs presented by Decedent.

**PREMISES CONSIDERED, PLAINTIFF PRAYS:**

1. This complaint be filed, served on defendants, and that the defendants be required to answer;

2. For trial by jury, if allowed by law;

3. For judgment against defendants for all damages allowed by law, including compensatory and punitive damages, including damages sufficient to compensate the minor son for loss of his father;

4. For an award of costs and attorneys fees;

5. For such other relief as is appropriate under the proof and claims.

RESPECTFULLY SUBMITTED,

s/ Michael E. Terry
MICHAEL E. TERRY (BPRN 3856)
s/ Stephanie H. Gore
STEPHANIE H. GORE (BPRN 17080)

Counsel for Plaintiff
**Terry & Gore**
1200 16th Avenue, South
Nashville, TN  37212
(615) 321-2750 office
(615) 250-4915 fax